**COMMODITY FUTURES TRADING COMMISSION, Plaintiff,**

v.

**CARTER, ROGERS AND WHITEHEAD & CO., INC., Saxon and Windsor Group, Ltd., Saxon and Windsor Corporation, Muhammad Bilal a/k/a Jeff Ross, and Ali Q. Shareef a/k/a Kenneth Belt, Defendants.**

No. 79 C 1580.

United States District Court, E. D. New York.

Sept. 15, 1980.

Eric H. Vinson, Michael Koblenz, Commodity Futures Trading Comm., New York City, for plaintiff.

Charles J. Hecht, New York City, for defendants.

Robert A. Holstein, Chicago, Ill., for proposed intervenor.

## MEMORANDUM ORDER

NEAHER, District Judge.

This action was commenced on June 18, 1979, by the Commodity Futures Trading Commission (CFTC) to enjoin defendants' alleged violations of provisions of the Commodity Exchange Act, as amended, 7 U.S.C. § 1 *et seq.* (1978) (the Act). The CFTC sought a temporary restraining order and preliminary and permanent injunctions against defendants' unlawful selling transactions involving commodity options, the appointment of a receiver, and a protective order *pendente lite* with respect to defendants' assets. The court issued such an order, which has remained in effect by consent of the parties, and appointed a receiver. A motion has since been made by Ronald Stone, individually and on behalf of all others similarly situated, to intervene as of right, Rule 24(a), F.R.Civ.P., or, alternatively, for permissive intervention. Rule 24(b), F.R.Civ.P. For the reasons set forth below, Stone's application is denied.

In February 1980, Stone, as an aggrieved customer who had entered into options contracts with defendants, filed a reparations complaint with the CFTC pursuant to 7 U.S.C. § 18 seeking $16,950 in damages from defendants. Pursuant to the 1974 amendments, which established the CFTC and modified the enforcement mechanisms available to injured customers, reparations complaints against registered traders, such

as defendants, may be filed with the CFTC within two years of the alleged improper conduct. 7 U.S.C. § 18(a). The CFTC will then conduct an investigation and, if the facts developed warrant further action, notify the traders and afford them an opportunity for a hearing on the complaint before an administrative law judge. 7 U.S.C. §§ 18(b), (c). Based on the findings of the administrative law judge, the CFTC is empowered to enter an order directing the offender to pay damages to the injured customer. 7 U.S.C. § 18(e). Such an order may be enforced in a district court, 7 U.S.C. § 18(f), and may be reviewed by petition to the Court of Appeals for the circuit where the administrative hearing was held. 7 U.S.C. § 18(g). As of the time of the instant motion, and apparently to date, no action has been taken on Stone's reparations complaint.

On January 8, 1980, the United States District Court for the Northern District of Illinois dismissed a class action complaint brought by Stone against the two corporate defendants here on the ground that the Act did not imply a private cause of action to enforce its provisions.[1] On January 15, 1980, Stone filed the instant motion to intervene.

Rule 24(a) provides:

"Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

It is true that Stone, as a customer complaining of defendants' commodity options selling activities, has an interest relating to the transactions which are the subject of this action. In addition, it appears that the interest of Stone, who seeks damages, is not adequately represented by the CFTC, which seeks only injunctive relief. The remaining issue, therefore, is whether Stone is "so situated that the disposition of the action may as a practical matter impair or impede his ability to protect" his interest. It is the court's view that he is not.

■ Stone asserts that if he were not joined in this action, "the risk of inconsistent determination of the issues exists which result would cause irreparable harm" to him. However, it is beyond doubt that a decision for defendants on any issue in this litigation could not be used to estop Stone from relitigating the same issue in a subsequent proceeding if Stone were not a party here and had never been afforded an opportunity to be heard. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979); *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 329, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). On the other hand, even if Stone were not a party here, the offensive use of collateral estoppel would be available to him to preclude defendants in a later proceeding from relitigating an issue decided against them after a full and fair opportunity to be heard was afforded them in this action. *Parklane Hosiery Co., Inc. v. Shore, supra*, 99 S.Ct. at 652.[2]

■ Moreover, it is clear that Stone has available to him—and has already sought—the remedy of a reparations proceeding in the CFTC. Stone makes no claim that this administrative route, with its statutory scheme for appeal and enforcement, will be insufficient to safeguard his interest. Since

---

1. See *Stone v. Saxon and Windsor Group, Ltd.*, 485 F.Supp. 1212, CCH Comm.Fut.L.Rep. Par. 31,100 (N.D.Ill.1980). It does not appear that an appeal was taken.

2. Indeed, in passing on the appropriateness of this device as employed by a private litigant who had not been a party to a prior agency enforcement action, the Supreme Court said:

"The application of offensive collateral estoppel will not here reward a private plaintiff who could have joined in the previous action, since the respondent probably could not have joined in the injunctive action brought by the SEC even had he so desired." *Id.*

Stone has not shown how his ability to protect his interest will be impaired if he is not made a party to this suit, his application for intervention as of right cannot be granted. See *SEC v. Everest Management Corp.*, 475 F.2d 1236, 1239 (2d Cir. 1972); *SEC v. Vesco*, 58 F.R.D. 182 (S.D.N.Y. 1973).[3]

Turning to Stone's application for permissive intervention, Rule 24(b) provides:

"Upon timely application anyone may be permitted to intervene in an action: . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

It does appear that Stone's claims for damages and at least some of the CFTC's claims for injunctive relief arise out of the same practices of defendants and would involve common questions of law and fact. However, because "the complicating effect of the additional issues and the additional parties outweighs any advantage of a single disposition of the common issues," *SEC v. Everest Management Corp., supra*, 475 F.2d at 1240, the court is of opinion that permissive intervention would be inappropriate here.

Stone proposes to intervene as representative of a class of similarly situated customers. It is apparent, therefore, that his intervention would add to this litigation the issues of certification of a class and Stone's ability to represent it. While both Stone and the CFTC allege violations of 7 U.S.C. §§ 6c(b) and 6c(c) and CFTC Regulation 32.11 thereunder, 17 C.F.R. 32.11 (1979), regarding the selling of commodity options,

the two actions are far from identical because the CFTC goes further and alleges violations of 7 U.S.C. §§ 6f(2) and 6d(2) concerning undercapitalization and failure to segregate properly customers' funds. In addition, in order to obtain damages Stone would be required to litigate the issues of causation and injury to himself, which are not elements in the CFTC's enforcement action.

■ Finally, prior to the instant application, the CFTC and counsel for defendants have been able to agree to extensions of the temporary restraining order and to the appointment of a receiver. It is possible that this apparent pattern of cooperation may be jeopardized by the intervention of a class of defendants' former customers seeking substantial money damages. The ability of the CFTC, an agency of limited resources, see *Leist v. Simplot*, slip op. 4017, 4104 (2d Cir., July 8, 1980), to negotiate a settlement and obtain a consent judgment and thereby perform its congressionally entrusted duty to protect the public interest, is a relevant consideration on a motion of this type. See *SEC v. Everest Management Corp., supra*, 475 F.2d at 1240; *SEC v. Canadian Javelin, Ltd.*, 64 F.R.D. 648, 651 (S.D.N.Y.1974).

■ Since, as discussed above, Stone has available alternate damages remedies,[4] and in the light of the undue delay and complication that his intervention is likely to entail, the court concludes that an exercise of its discretion to permit intervention would be improper.

Accordingly, Stone's application for intervention as of right, or, alternatively, for permissive intervention, is denied.

SO ORDERED.

---

3. Since the enforcement provisions of the Act were in large part modelled on those governing actions brought by the Securities Exchange Commission, the case law on attempts to intervene in SEC enforcement suits may be considered particularly relevant here. See *Commodity Futures Trading Commission v. Crown Colony Commodity*, 434 F.Supp. 911, 919 (S.D. N.Y.1977).

4. The court assumes that, notwithstanding the recent decision in *Leist v. Simplot*, slip op. 4017 (2d Cir., July 8, 1980), the January 8, 1980, judgment by the district court for the Northern District of Illinois would be given *res judicata* effect in any future suit by Stone claiming a private right of action implied under the Act. See *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940); 1B Moore's Federal Practice ¶ 0.415.