**ULTRACASHMERE HOUSE, LTD., a corporation, Plaintiff-Appellant,**

v.

**Ted MEYER, d/b/a Alex Rice Company, Defendant-Appellee.**

**No. 81–7166**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Dec. 28, 1981.

Miller & Pappanastos, Charles P. Miller, Montgomery, Ala., for plaintiff-appellant.

Copeland, Franco, Screws & Gill, Albert W. Copeland, Montgomery, Ala., for defendant-appellee.

Before RONEY, KRAVITCH and CLARK, Circuit Judges.

KRAVITCH, Circuit Judge:

Appellant Ultracashmere brought this suit under 9 U.S.C. § 4, which authorizes suits in federal district court, if the prerequisites for federal jurisdiction are otherwise satisfied, to enforce arbitration agreements entered into by private parties. Appellant sought injunctive relief compelling arbitra-

tion under that statute and a stay under 28 U.S.C. § 2283 against the proceedings previously initiated by appellee in state court. The district court, 88 F.R.D. 359, in separate orders, denied both requests on the grounds that appellant had unduly delayed in asserting its claim in federal court and that, the state court having decided the issues, res judicata precluded relitigation. We agree with the district court that the Arbitration Act does not unconditionally entitle a party to relief in federal court. Rather, federalism and judicial efficiency require that the conduct of the parties, in particular the timeliness of their actions and the status of state court litigation between the same parties, be considered by federal courts in deciding whether to grant such relief. We also agree with the district court that appellant's failure to effectuate a timely removal, coupled with its delay in bringing this action, precluded that court from interfering with the state court proceedings and from allowing appellant to relitigate the issues. Thus we affirm.

## I. The Facts

The facts of this case demonstrate the quagmire into which federal courts frequently have been thrust in arbitration disputes in which the parties have involved both state and federal tribunals. *Compare* this case *with Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 637 F.2d 391, 394–95 (5th Cir. 1981). In February 1979, Ultracashmere, a New York clothing manufacturer, and Meyer, operator of several retail clothing stores in Alabama and Georgia, entered into three written agreements for the sale and purchase of clothing. The contracts all contained the same arbitration clause.[1] Subsequently a dispute arose between the parties, and on November 5, 1971 Ultracashmere demanded arbitration.[2]

Meyer refused to arbitrate and instead instigated an action in the Circuit Court of Montgomery County, Alabama.

In his state court complaint, Meyer alleged that the arbitration clause was concealed by fine print, that Ultracashmere never informed Meyer that the clause called for arbitration in New York rather than Alabama, and that had Meyer been aware of the clause he would not have signed the contracts. Meyer also alleged that Ultracashmere had fraudently misrepresented certain facts concerning the substantive terms of the contracts. Meyer requested an injunction against further attempts by Ultracashmere to compel arbitration, a declaration that the contracts and the arbitration clause were null and void, and compensatory and punitive damages for losses allegedly sustained by him as a result of reliance on Ultracashmere's misrepresentations. Ultracashmere moved to dismiss Meyer's complaint arguing that the Alabama court was without jurisdiction over Ultracashmere because: (1) it was not a resident corporation of that state; (2) the contract was made in New York; (3) the contract compelled arbitration of any dispute concerning the contract; and (4) the contract required that such arbitration and any litigation of a contract dispute take place in New York. Meyer, meanwhile, moved for a partial summary judgment declaring the invalidity or unenforceability of the arbitration clause in the contracts. On May 29, 1980, the state court denied Ultracashmere's motion to dismiss but, upon Ultracashmere's request, postponed decision on Meyer's motion to allow Ultracashmere to supply authorities in opposition. The court also temporarily enjoined the American Arbitration Association from conducting arbitration of the dispute and ordered Ultracashmere to com-

---

1. Notwithstanding anything herein to the contrary, the rights and obligations of buyer and seller hereunder are defined by, and shall be subject to, the Basic Trade Provisions now approved and promulgated as of January 15, 1948, by the National Retail Drygoods Association and the Apparel Industries Inter-Association Committee, including the provisions that all disputes or differences arising between the parties shall be settled by arbitration which may be initiated and conducted and any award therein confirmed in the manner described in such provisions upon service of process accordingly.

2. Ultracashmere claimed that the contracts' arbitration clause obligated Meyer to arbitrate the dispute in New York City.

ply with Meyer's production requests and to provide the court with copies of the contract and the provisions of the National Dry Goods Association and the Apparel Industries Inter-Association Committee incorporated by reference into the arbitration clause of the contract.[3]  On June 6, 1980, having found that Ultracashmere was persisting in its attempts to arbitrate the dispute in violation of its earlier order and that Ultracashmere appeared unlikely to respond promptly to the prior court order for production of documents, the court enjoined Ultracashmere from insisting on arbitration and ordered it to respond to the production requests by June 11, 1980.  The court opined:

> If the alleged arbitration clauses in the contracts between the parties are invalid or unenforceable, there is no basis to require plaintiff to arbitrate.  Any arbitration proceedings would cause the parties to expend unnecessary time and money and any award made by the American Arbitration Association would be void and unenforceable.  The validity or enforceability of the arbitration clauses involves questions of law which must be decided by a court and not by lay arbitrators.

By June 26, Ultracashmere still had not complied with the order for production of documents nor filed any evidence of the contracts or of the provisions of the two associations that had been incorporated into the contracts.  Finding Ultracashmere in violation of its prior production orders thus preventing Meyer from attempting to prove, and the court from deciding, the invalidity of the arbitration clause, the court granted partial summary judgment to Meyer; it declared the purported arbitration clauses void and unenforceable and permanently enjoined Ultracashmere from pursuing its attempt to arbitrate its disputes with Meyer.  The remainder of the state court litigation proceeded in much the same vein, with Ultracashmere continuing to insist on arbitration and ignoring Meyer's requests for, and the court's orders

pertaining to, discovery and the court in response imposing sanctions on Ultracashmere under Ala.R.Civ.P. 37(b)(2)(A) by finding facts and deciding issues in favor of Meyer.  The state court made every attempt to encourage Ultracashmere to discontinue its obstructionist tactics; it even offered to rescind previously imposed sanctions if Ultracashmere would respond to its orders.  The court's efforts were for the most part unsuccessful, however, and by the time the trial date was set, all issues in the litigation had been decided by the court adversely to Ultracashmere with the exception of the amount of damages, which was the sole question to be submitted to the jury.

On December 11, four days before the state court trial and almost nine months after initiation of the state court proceedings, Ultracashmere filed this action in the Federal District Court for the Middle District of Alabama seeking a stay of the state court proceedings under 28 U.S.C. § 2283 and an order compelling arbitration under 9 U.S.C. § 4.  The district court denied appellant's motion to stay on the grounds that, assuming *arguendo* that it had authority to grant the stay under section 2283, it would not exercise its discretion under that provision because of appellant's delay in seeking a stay until the state court had adjudicated all issues except the amount of damages.  The district court noted that appellant had failed to remove the state court suit to federal court, which it could have done under 28 U.S.C. § 1441 and had instead "filed an answer and counterclaim to defendant's state court action, [taken] depositions of witnesses, and proceeded to litigate the same dispute for which it now seeks an order compelling arbitration and a stay."

## II.   The Arbitration Act

■   The purpose of the Federal Arbitration Act was to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that would be speedier and less costly than litigation.  *Wilko v. Swan*, 346 U.S. 427, 74

**3.**  See note 1 *supra.*

S.Ct. 182, 98 L.Ed. 168 (1953); *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402 (2d Cir. 1959), *cert. denied*, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37. The Act thus overrules the common law precedents prohibiting enforcement of arbitration agreements and creates a national law favoring such agreements where contained in contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2. *Robert Lawrence, supra*, at 406–07. Federal and state courts alike are bound, under the supremacy clause, to enforce the Act's substantive provisions. *Id.* *See also Prima Paint Co. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400, 87 S.Ct. 1801, 1804, 18 L.Ed.2d 1270 (1967).

Enforcement of the Act is left primarily to state courts, federal courts being authorized to adjudicate only those arbitration disputes that are otherwise within their jurisdiction. 9 U.S.C. § 4. Moreover, the federal courts' jurisdiction over even this limited number of suits is not exclusive of but rather is concurrent with the jurisdiction of state courts. *Id.* § 3; *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 637 F.2d 391, 395 (5th Cir. 1981). It is thus clear that, while Congress considered the policies favoring arbitration agreements sufficiently important to override state law barriers to their enforcement, it nonetheless viewed state courts as fully capable of effectuating those policies; the Act evidences no hint of a concern by Congress that state tribunals would be less competent or less willing than the federal courts to give effect to its substantive provisions.

While the Act compels courts to stay their own proceedings where the issues to be litigated have, by agreement of the parties, been committed to resolution by arbitration, 9 U.S.C. § 3, it does not specifically authorize federal courts to stay proceedings pending in state courts. Thus, authority for issuing such a stay must be found in 28 U.S.C. § 2283—the statute generally governing federal court stays of state court proceedings.[4] The authority conferred on federal courts by section 2283 is very limited. That section, which provides that federal courts "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments," is essentially prohibitive. It adopts the well established principle that the lower federal courts are not superior to state courts and may not review state court judgments.[5] *Lion Bonding & Surety Co. v. Karatz*, 262 U.S. 77, 90, 43 S.Ct. 480, 484, 67 L.Ed. 871 (1923). Challenges to state court actions generally must proceed by direct appeal through appropriate state tribunals and, where issues of federal law are involved, by appeal or certiorari to the Supreme Court of the United States. *Id.*

Where a federal court is asked to interfere with pending state court proceedings it must proceed with caution, taking into account general considerations of federalism and, in particular, the likelihood of seriously disrupting the legitimate functioning of the judicial system of the state. *Ku-*

---

4. That § provides:

    A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

5. In *Gresham Park Community Organization v. Howell*, 652 F.2d 1227 (5th Cir. 1981) the Fifth Circuit rejected a rule developed in earlier cases that district courts had no jurisdiction over any suit that would have the effect of modifying a state court judgment. *See Brown v. Chastain*, 416 F.2d 1012 (5th Cir. 1969). The *Gresham* court held that where original jurisdiction is otherwise authorized by federal statute, the absence of appellate jurisdiction is "ir-

relevant." *Gresham Park, supra*, at 1236. In *Gresham Park*, jurisdiction was based on 28 U.S.C. § 1343(3), which allows actions to be brought in federal court for redress of constitutional deprivations inflicted under color of state law. *See Gresham Park, supra*, at 1237–40.

In this case jurisdiction is authorized by the diversity jurisdiction provision, 28 U.S.C. § 1331, and the Arbitration Act, 9 U.S.C. § 4. We emphasize that our holding here is not jurisdictional but rather is founded on the limitations on equitable relief affordable under 28 U.S.C. § 2283 and on principles of res judicata—both questions on the merits. *Cf. Gresham Park, supra*, at 1233 (distinguishing lack of jurisdiction, abstention, and res judicata).

*gler v. Helfant*, 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975); *Southwest Airlines Co. v. Texas International Airlines, Inc.*, 546 F.2d 84 (5th Cir. 1977), *cert. denied*, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93; *International Association of Machinists and Aerospace Workers v. Nix*, 512 F.2d 125 (5th Cir. 1975); *American Radio Association v. Mobile S.S. Association, Inc.*, 483 F.2d 1 (5th Cir. 1973). In addition to principles of federalism section 2283 was founded on traditional concepts of equity, and requests for injunctions against state court proceedings must be decided by reference to "the traditional equitable tests of threatened irreparable harm for which the petitioner has no adequate remedy at law." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 482 F.Supp. 788, 792 (D.Fla.1980), *reversed and remanded on other grounds*, 637 F.2d 391 (5th Cir. 1981).

■ Neither the policies embodied in the Arbitration Act nor the equitable principles underlying the anti-injunction statute and its exceptions supported issuance of stay against the state court action in this case. The policies of avoiding litigation and pro-

moting prompt resolution of disputes are not disserved by denying such a stay where, as here, the party requesting the stay made no attempt to remove the action to federal court [6] at the time the suit was filed,[7] *see Empire Life Insurance Co. v. Lorenz*, 445 F.2d 293 (5th Cir. 1971) (failure to remove sufficient equitable ground for denial of stay), but instead allowed the state court proceedings to continue for many months, turning to the federal court only after most issues had been resolved against it in the state litigation. For a federal court to have interfered with the state proceedings at that late date would have disrupted the functioning of the state judicial machinery, rendering the resources already expended by the state and the parties a wasted asset, and surely would have created friction between the state and federal judiciaries.[8]

Other cases in which federal courts have issued stays of state court proceedings pending arbitration do not undermine the conclusion we reach since none has involved the degree of delay in seeking federal judicial relief that appellant is guilty of here.[9]

6. The action was removable under 28 U.S.C. § 1441 on the basis of diversity of citizenship; were it not, this court would clearly be without jurisdiction to entertain the present proceeding.

7. The record reflects no attempt at removal by appellant, timely or otherwise.

8. Appellant's stubborn refusal to participate throughout most of the state court litigation only increases the potential for strained federal-state court relations in the event of a federal stay. Since granting a stay of the state action and allowing appellant to proceed in federal court would enable it to evade the sanctions imposed on it by the state court, the effect of such a ruling would be to condone conduct in state court that we would not countenance in our own courts. Appellant could have removed the state court action to federal court if it feared the state court would be inhospitable to its federal claim. Having declined to exercise that option, it could not simply refuse to respond to the requests and orders of the plaintiff and the state court, allow rulings to be made against it, and then attempt to evade the effect of those rulings by running to federal court near the end of the state court proceedings.

9. *See, e. g., Commodity Futures Trading Comm. v. Carter, Rogers & Whitehead*, 497

F.Supp. 450 (E.D.N.Y.1980); *Burger Chef Systems, Inc. v. Baldwin, Inc.*, 365 F.Supp. 1229 (S.D.N.Y.1973), *reversed in part on other grounds*, 507 F.2d 841 (6th Cir. 1974); *Network Cinema Corp. v. Glassburn*, 357 F.Supp. 169 (S.D.N.Y.1973); *Necchi Sewing Machine Sales Corp. v. Carl*, 260 F.Supp. 665 (S.D.N.Y.1966). Cf. *Sumitomo Corp. v. Parakopi Compania Maritima*, 477 F.Supp. 737 (S.D.N.Y.1979), *affirmed*, 620 F.2d 286 (2nd Cir. 1980) (compelling arbitration despite litigation pending in foreign court noting that "all that has transpired is the filing of a complaint.") See also *Southern Bell Telephone & Telegraph Co. v. Louisiana Power & Light Co.*, 309 F.2d 181 (5th Cir. 1962), in which the appellant had not sought a stay of a pending state court suit but did seek an order compelling arbitration. The Fifth Circuit granted the requested relief despite the pendency of the state court proceedings. There the state court had refused to stay its own action under the state arbitration statute, although appellant had not pressed its Federal Arbitration Act claim in the state court proceedings. In any event, that case is distinguishable because at the time it was decided the state court had not yet reached a final decision, nor had the merits of the controversy been litigated. *Id.* at 183. The appellant had

Moreover, we find the recent Fifth Circuit case of *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 637 F.2d 391 (5th Cir. 1981), which reversed a district court order compelling arbitration, closely analogous to the case here, hence supporting our result.[10]

In *Merrill Lynch*, the client of a stockbroker filed a complaint in state court alleging, *inter alia*, breach of fiduciary duties in the handling of her accounts. The broker, asserting that the stock option agreements contained an arbitration clause enforceable under the Federal Arbitration Act, removed the action to the federal district court, from which it sought an order compelling arbitration. The district court thereafter remanded the suit to the state tribunal on the ground that removal had been improvidently granted due to inadequate allegations of diversity jurisdiction. The state court then determined that Merrill Lynch had no right to arbitration under the state arbitration statute and ordered a trial. Meanwhile, Merrill Lynch, following its aborted attempt at removal, had filed an independent action in federal court, this time alleging a proper basis for diversity jurisdiction and again seeking an order compelling arbitration. The district court granted the order.[11] On appeal, the Fifth Circuit reversed on the ground that the district court had failed to consider the effect of the state court ruling denying arbitration and ordering commencement of a trial, which had been issued before the district court entered its order. Because of the possible applicability of either res judicata or collateral estoppel,

either of which would have operated as a bar to the federal court litigation, the court of appeals remanded the case to the district court with directions to

> dismiss this action unless it can be shown that the state court's July 2nd order did not rule on Merrill Lynch's federal arbitration claims in its original motion to compel arbitration and stay further proceedings and that the state court's July 2nd order does not have final [res judicata] effect under Florida law.

*Id.* at 398–99 (footnote omitted).

The Fifth Circuit's reversal of the arbitration order in *Merrill Lynch* because of the unclear status of the state court order [12] suggests that when state court litigation has proceeded to a judgment, whether that judgment entirely resolves the dispute or whether further adjudication is required, a federal court must determine the preclusive effect of that judgment before entertaining an independent action seeking relief under the Arbitration Act.[13] Moreover, even if the state court has not issued an order having a preclusive effect on the federal action, where, as here (and in *Merrill Lynch*), the party seeking relief in federal court has failed to exercise its right to removal and proceeded to litigate the issue of its right to arbitration in the state tribunal, it is within the district court's discretion to refuse a stay of the state proceedings and to stay its own decision pending the state court's resolution of the arbitrability question.

litigated only its right to arbitration under state law and there was no delay in bringing the federal action thereafter.

**10.** Merrill Lynch subsequently moved for a stay of the state court proceedings, which was also granted by the district court. The stay was granted only shortly before this court's decision reversing the arbitration order and was not considered as part of the appeal. If the district court, on remand in light of our decision, dismisses Merrill Lynch's action for an arbitration order, it would seem that the stay issued by the district court under 28 U.S.C. § 2283 to "protect and effectuate" that order would also have to be dissolved.

**11.** The Eleventh Circuit adopted Fifth Circuit precedent in the en banc case of *Bonner v. Prichard*, 661 F.2d 1206 (11th Cir. 1981).

**12.** It was unclear (1) what issues the state court had decided that might preclude relitigation because of collateral estoppel and (2) whether its judgment was a "final order" entitled to res judicata as a matter of state law.

**13.** The requirement that federal courts consider the effect of a prior state court ruling is the same whether the plaintiff seeks an arbitration order or a stay of the state court action, since the latter is but an adjunct of, and can be issued only to effectuate, the former, regardless of the order in which they are sought. *See* 28 U.S.C. § 2283.

We note also that this case is distinguishable from those where a state court has disregarded or refused to apply federal law.[14] *Compare Network Cinema Corp. v. Glassburn*, 357 F.Supp. 169 (S.D.N.Y.1973) (state court had held arbitration clause unenforceable within state). The issue addressed first by the state court and decided adversely to appellant—whether the arbitration provision was void for fraud—is a question the Supreme Court has designated as proper for judicial resolution. *Prima Paint Co. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). *See also Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 410–11 (2nd Cir. 1959). Thus, where a party challenges an arbitration clause as having been induced by fraud, the court must decide this question *before* it can issue an order compelling arbitration. *Robert Lawrence, supra*, at 411. Where, as here, the court determines that the arbitration clause was fraudulently procured, the party committing the fraud has no right to arbitration, and judicial resolution of the merits of the controversy is proper. *Id.* In the proceedings before the state court, Meyer claimed Ultracashmere had fraudulently induced it to agree to arbitration. The Alabama court addressed this issue as an initial matter and decided it adversely to appellant. Only after holding that the arbitration clause was void for fraud did the court address the merits of the contract dispute. The state court thus proceeded in a manner that was clearly consistent with the federal precedent interpreting the Arbitration Act. For the above reasons, we conclude that the district court's denial of appellant's motions for a stay of the state court proceedings and its order deferring resolution of appellant's motion for an arbitration order were proper. We therefore address the effect of the intervening state court judgment on appellant's federal court action to compel arbitration.

### III. Res Judicata

The full faith and credit clause of the Federal Constitution, U.S.Const. art. 4, § 1,[15] is binding only on state courts. In 1790, however, Congress enacted the predecessor[16] to Title 28 U.S.C. § 1738, which imposes on federal courts as well as state courts the duty to give full faith and credit to judgments rendered by state tribunals. *Mills v. Duryee*, 11 U.S. (7 Cranch) 481, 485, 3 L.Ed. 411 (1813). Section 1738 provides that state court proceedings shall be given "the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such state . . . from which they are taken." Thus, where the parties and the cause of action litigated are the same, a judgment rendered by a state court if it would by operation of res judicata preclude a subsequent suit in state court must similarly be treated as conclusive by federal courts, and parties may not relitigate such a claim even where a federal question is comprised within the dispute. *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Under Alabama law, res judicata precludes relitigation of an action where four "essential elements" are satisfied: (1) a prior judgment has been rendered by a court of competent jurisdiction; (2) there is substantial identity of the parties in the two suits; (3) there is identity of issues in the two suits; and (4) the prior judgment was rendered on the merits. *Ozley v. Guthrie*, 372 So.2d 860, 861 (Ala.1979) (citing *Wheeler v. First Alabama Bank of Birmingham*, 364 So.2d 1190 (Ala.1978)). "Where these elements are present . . . the former judgment is an absolute bar to any subsequent suit on the same cause of action, including any

14. We do not here decide whether we would grant a stay of state court proceedings or an order compelling arbitration in such a case regardless of other factors, such as failure to remove.

15. That clause provides: "Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every oth-er State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

16. The 1790 version of this provision is the Act of May 26, 1790, 1 Stat. 122.

issue which was or could have been litigated in the prior action." *Ozley, supra,* at 861 (citing *McGruder v. B & L Construction Co.,* 331 So.2d 257 (Ala.1976)). These four elements are present in the case at bar. Nor have the parties argued otherwise. First, the state court clearly had jurisdiction over the subject matter of Ultracashmere's claim since the Arbitration Act makes jurisdiction over arbitration disputes concurrent in state and federal courts. 9 U.S.C. § 3. Second, the parties to this federal suit are identical, albeit opposing in posture, to those who were before the Alabama court. Third, the issues raised are the same; appellant's claim here—that it is entitled under the Federal Arbitration Act to arbitrate, rather than litigate, its dispute with appellee—coincides with its defense and counterclaim in the state court proceeding.[17] Last, the state court judgment clearly was rendered on the merits. Hence the Alabama circuit court decision was res judicata and precludes litigation of this action. For this reason, the decision of the district court denying relief is AFFIRMED.

---

17. As appellant has aptly pointed out, its answer and counterclaim to appellee's complaint in state court raised "the affirmative defense that [appellee's] remedy was under the arbitration clause contained in the contract between the parties *which required the parties to proceed to arbitrate any alleged claim, dispute or right and the state action should be dismissed by virtue of these contracts.* Brief of appellant at 15–16 (emphasis added). That appellant did not expressly base its argument in state court on the Federal Arbitration Act does not preclude the operation of res judicata since Ala.R. Civ.P. 8(c) requires parties to "set forth affirmatively" the defense of arbitration, and Alabama cases hold that res judicata precludes relitigation of issues that were actually litigated or *could have been* litigated. *Educators' Investment Corp. of Alabama v. Autrey,* 383 So.2d 536, 538 (Ala.1980); *McGruder v. B & L Construction Co.,* 331 So.2d 257 (1976).

More importantly, the state court specifically held in its June 26 order granting plaintiff's Motion for Partial Summary Judgment that the arbitration clause in the contracts was void and unenforceable. Meyer had alleged that the arbitration clause was fraudulently procured, and under federal law, which governs on this issue, *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Tullis v. Kohlmeyer & Co.,* 551 F.2d 632, 638 n.12 (5th Cir. 1977), where fraud in the inducement of an arbitration provision is alleged, a court hearing an arbitration dispute must decide that question. *Wick v. Atlantic Marine, Inc.,* 605 F.2d 166, 168 (5th Cir. 1979); *Robert Lawrence Co. v. Devonshire Fabrics, Inc.,* 271 F.2d 402, 410–11 (2nd Cir. 1959), *cert. dismissed,* 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960). *See also Prima Paint Corp., supra,* 388 U.S. at 403–04 & n.12, 87 S.Ct. at 1805–06 n.12. If the court finds the arbitration clause was fraudulently procured it cannot compel arbitration. *Wick, supra,* at 168; *Robert Lawrence, supra,* at 411. The Alabama court decided this issue adversely to appellant and that court's judgment is res judicata as to all claims and issues appellant has raised concerning its right to arbitrate the dispute with appellee.